IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ODIE GRAY, ) | |
| ) | Civil Action File No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DELOITTE LLP, ) | JURY TRIAL DEMANDED |
| DELOITTE & TOUCHE LLP, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Odie Gray, by and through undersigned counsel, The Kirby G. Smith Law Firm, LLC, and files suit against Defendants, Deloitte LLP and Deloitte & Touche LLP, showing the Court as follows:

## Parties

1. Plaintiff is a United States citizen residing in the State of Georgia.

2. Plaintiff is African-American.

3. Defendant Deloitte LLP is a Delaware corporation with its principal office in New York.

4. Defendant Deloitte & Touche LLP is a Delaware corporation with its principal office in New York.

5. Defendants are affiliated entities under Deloitte Touche Tohmatsu Limited, an English corporation.

6. In all relevant respects, Defendants are joint employers.

7. Defendants jointly operate under the trade name "Deloitte."

8. Defendants maintain an office in Atlanta, Georgia.

## **Jurisdiction**

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which arises under Title VII

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count IV of this Complaint, which arises under Section 1981.

13. Venue is proper in this Court because the employment practices forming the basis of this action were undertaken within the Atlanta Division of the Northern District of Georgia.

## Statement of Facts

14. Plaintiff worked for Defendants as a Service Delivery Manager.

15. Plaintiff's job duties included management of cyber-security projects.

16. As part of Plaintiff's job, Plaintiff was required to be a certified project manager.

17. In 2016, Plaintiff achieved the Project Management Professional ("PMP") certification.

18. The Project Management Professional certification is the highest level of certification for project managers within Defendants' company.

19. As part of Plaintiff's job, Plaintiff maintained a Security Clearance through the United States Government.

20. Upon information and belief, Plaintiff was paid $30,000-$40,000 per year less than comparable white employees with the same or less experience and certifications.

21. In February 2016, one of Plaintiff's supervisors, Terry Bearce, referred to Plaintiff by the name of another African-American employee.

22. Plaintiff corrected Bearce regarding Plaintiff's name.

23. Bearce responded that all African-Americans look alike.

24. Plaintiff reported Bearce to Human Resources in February 2016.

25. Bearce remained in Plaintiff's supervisory chain.

26. Bearce continued to have direct influence over what projects were assigned to Plaintiff.

27. Plaintiff received negative performance reviews following his report to Human Resources.

28. Plaintiff's negative reviews were based on subjective criteria.

29. Plaintiff's reviews did not consider Defendants' official performance metrics.

30. Plaintiff received positive reviews from the clients whose projects Plaintiff managed.

31. Defendants' employees are each assigned a "career coach" who serves as an advisor and point of contact for employees with questions or concerns about career trajectory.

32. In May 2016, Plaintiff's career coach went on medical leave.

33. For approximately six months, Plaintiff simply did not have a career coach.

34. Upon information and belief, employees of races other than African-American who had the same career coach were assigned a new career coach immediately.

35. Upon information and belief, employees who had not made reports of discrimination and who had the same career coach were assigned a new career coach immediately.

36. On or about July 27, 2016, Plaintiff reported his negative performance reviews and lack of a career coach to Human Resources.

37. In August 2016, Plaintiff's largest client was reassigned to two of Plaintiff's peers, Kimberly Basmajian and Tarun Sondhi.

38. The client referred to in Paragraph [37] of this Complaint had requested greater involvement by Plaintiff in the client's projects.

39. The loss of Plaintiff's best client cost Plaintiff approximately one-third of his billable hours.

40. The loss of Plaintiff's best client meant that Plaintiff was unable to meet his performance goals.

41. On August 17, 2016, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

42. Shortly after Plaintiff filed his EEOC charge, his performance goals were made more difficult to meet.

43. One example of changing goals is Plaintiff's "utilization" score – or billable hour percentage score – which had a goal range of 70-75% in July 2016.

44. By September 2016, Plaintiff's utilization goal was increased to 80-90%.

45. Plaintiff's was not given more billable work to help meet the increased goal.

46. Plaintiff's ability to meet the increased utilization goal was hampered by the loss of his best client.

47. Despite the loss of Plaintiff's best client, Plaintiff met his goal, achieving a utilization score of 82%.

48. Among Plaintiff's peers, the median utilization score was only 76%.

49. Despite Plaintiff's performance, Plaintiff was rated at the bottom of his peer group.

50. Plaintiff was not given a promotion in 2016.

51. Upon information and belief, only comparable employees whose races were not African-American received promotions from Defendants.

52. Upon information and belief, only comparable employees who had not made reports of discrimination received promotions from Defendants.

53. On June 2, 2017, Plaintiff and Defendants engaged in a mediation facilitated by the EEOC.

54. Plaintiff was represented by counsel at the June 2 mediation.

55. At the June 2 mediation, Plaintiff and Defendants signed a confidentiality agreement regarding all information disclosed at the mediation.

56. During the June 2 mediation, Plaintiff disclosed some of his evidence to Defendants in good faith.

57. The June 2 mediation was ultimately unsuccessful, and Plaintiff's charge was transferred back to the EEOC's Investigations Unit on January 11, 2017.

58. On or about January 19, 2017, Defendants' Human Resources department contacted Plaintiff and informed Plaintiff that Defendants were launching an investigation into Plaintiff's collection of evidence.

59. Defendants' demanded that Plaintiff turn over all evidence he had collected.

60. Defendants specifically cited the evidence Plaintiff disclosed in confidence during the EEOC mediation.

61. Plaintiff informed Defendants that all requests must be directed to Plaintiff's attorney.

62. On January 21, 2017, Defendants' Human Resources investigator informed Plaintiff in writing that Defendants' Office of General Counsel approved the request and determined that Plaintiff's counsel need not be involved.

63. Defendants reiterated their demand for Plaintiff's evidence.

64. On January 26, 2017, Plaintiff filed a Charge of Discrimination with the EEOC on the basis of retaliation concerning the investigation.

65. On January 26, 2017, Plaintiff's counsel sent the new charge to Defendants' counsel along with a cease and desist letter via electronic mail.

66. Approximately two hours after Defendants' counsel received the charge and letter, Plaintiff was notified that his employment was terminated.

67. Plaintiff was notified that his termination was a result of his failure to cooperate with Defendants' investigation.

68. On January 26, 2017, Plaintiff sent an additional Charge of Discrimination form to the EEOC regarding his termination.

69. Upon information and belief, Defendants have disparaged Plaintiff to potential employers attempting to verify Plaintiff's employment.

70. The EEOC issued Notices of Right to Sue for all Charges of Discrimination.

### Count I:  Race Discrimination Under Title VII

71. Plaintiff reasserts and incorporates Paragraphs 1 through [70] of this Complaint as if fully set forth herein.

72. Plaintiff is a member of a protected class by virtue of his race.

73. Plaintiff was paid substantially less than comparable white employees.

74. The pay gap between Plaintiff and employees of a different race was a result of race discrimination in violation of Title VII.

75. Plaintiff was not promoted upon receiving a higher certification, while comparable white employees received promotions with higher certifications.

76. Racially disparaging comments made to Plaintiff demonstrate discriminatory animus.

77. The failure to remove Bearce from Plaintiff's supervisory chain demonstrates discriminatory animus.

### Count II:  Race Discrimination Under Section 1981

78. Plaintiff reasserts and incorporates Paragraphs 1 through [77] of this Complaint as if fully set forth herein.

79. Plaintiff was paid substantially less than comparable white employees.

80. Plaintiff was not promoted upon receiving a higher certification, while comparable white employees received promotions with higher certifications.

81. Racially disparaging comments made to Plaintiff demonstrate discriminatory animus.

82. The failure to remove Bearce from Plaintiff's supervisory chain demonstrates discriminatory animus.

### Count III:  Retaliation Under Title VII

83. Plaintiff reasserts and incorporates Paragraphs 1 through [82] of this Complaint as if fully set forth herein.

84. The report to Human Resources detailed in Paragraph [24] of this Complaint constituted protected activity under Title VII.

85. The negative performance reviews detailed in Paragraph [27] of this Complaint constituted an adverse action under Title VII.

86. The six-month period detailed in Paragraph [33] of this Complaint – during which Plaintiff was denied access to a career coach – constituted an adverse action under Title VII.

87. The report to Human Resources detailed in Paragraph [36] of this Complaint constituted protected activity under Title VII.

88. Defendants' reassignment of Plaintiff's client – as detailed in Paragraphs [37-40] of this Complaint – constituted an adverse action under Title VII.

89. Plaintiff's EEOC Charge detailed in Paragraph [41] of this Complaint constituted protected activity under Title VII.

90. The changes to Plaintiff's performance goals detailed in Paragraphs [42-46] constituted an adverse action under Title VII.

91. The failure to promote Plaintiff following his attainment of a higher certification constituted an adverse action under Title VII.

92. The June 2 mediation between Plaintiff and Defendants constituted protected activity under Title VII.

93. Defendants' investigation into Plaintiff's gathering of evidence constituted an adverse action under Title VII.

94. Defendants' attempts to exclude Plaintiff's counsel during their investigation constituted an adverse action under Title VII.

95. Plaintiff's objection to Defendants' investigation and direction to contact his attorney constituted protected activity under Title VII.

96. Plaintiff's additional charge of discrimination and the accompanying cease and desist letter constituted protected activity under Title VII.

97. Plaintiff's termination constituted an adverse action under Title VII.

98. The close temporal proximity and escalating nature of protected activities and adverse actions demonstrates causation.

99. Defendants' disparaging comments to potential employers of Plaintiff constitute adverse actions under Title VII.

## Count IV:  Retaliation Under Section 1981

100. Plaintiff reasserts and incorporates Paragraphs 1 through [98] of this Complaint as if fully set forth herein.

101. The report to Human Resources detailed in Paragraph [24] of this Complaint constituted protected activity under Section 1981.

102. The negative performance reviews detailed in Paragraph [27] of this Complaint constituted an adverse action under Section 1981.

103. The six-month period detailed in Paragraph [33] of this Complaint – during which Plaintiff was denied access to a career coach – constituted an adverse action under Section 1981.

104. The report to Human Resources detailed in Paragraph [36] of this Complaint constituted protected activity under Section 1981.

105. Defendants' reassignment of Plaintiff's client – as detailed in Paragraphs [37-40] of this Complaint – constituted an adverse action under Section 1981.

106. Plaintiff's EEOC Charge detailed in Paragraph [41] of this Complaint constituted protected activity under Section 1981.

107. The changes to Plaintiff's performance goals detailed in Paragraphs [42-46] constituted an adverse action under Section 1981.

108. The failure to promote Plaintiff following his attainment of a higher certification constituted an adverse action under Section 1981.

109. The June 2 mediation between Plaintiff and Defendants constituted protected activity under Section 1981.

110. Defendants' investigation into Plaintiff's gathering of evidence constituted an adverse action under Section 1981.

111. Defendants' attempts to exclude Plaintiff's counsel during their investigation constituted an adverse action under Section 1981.

112. Plaintiff's objection to Defendants' investigation and direction to contact his attorney constituted protected activity under Section 1981.

113. Plaintiff's additional charge of discrimination and the accompanying cease and desist letter constituted protected activity under Section 1981.

114.    Plaintiff's termination constituted an adverse action under Section 1981.

115.    The close temporal proximity and escalating nature of protected activity and adverse actions demonstrates causation.

116.    Defendants' disparaging comments to potential employers of Plaintiff constitute adverse actions under Section 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Declaratory relief;

b. Actual and compensatory damages in an amount to be determined by the enlightened conscience of a jury;

c. Punitive damages; and

d. Attorney's fees, costs of litigation and any other relief the Court deems just and proper.

Date: November 24, 2017.

Respectfully submitted,

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396
Kirby G. Smith
Georgia Bar No. 250119

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 24th day of November, 2017.

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396
Kirby G. Smith
Georgia Bar No. 250119

4488 N Shallowford Rd
Suite 105
Dunwoody, GA 30338
Phone: 404-303-5112
Fax: 877-352-6253
amb@kirbygsmith.com

## FONT AND POINT CERTIFICATION

The Undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

Respectfully submitted this 24th day of November, 2017.

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396
Kirby G. Smith
Georgia Bar No. 250119

4488 N Shallowford Rd
Suite 105
Dunwoody, GA 30338
Phone: 404-303-5112
Fax: 877-352-6253
amb@kirbygsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 24th day of November, 2017, served all parties in this matter with the foregoing **COMPLAINT** pursuant to Fed. R. Civ. P. 4.

Respectfully submitted this 24th day of November, 2017.

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396
Kirby G. Smith
Georgia Bar No. 250119

4488 N Shallowford Rd
Suite 105
Dunwoody, GA 30338
Phone: 404-303-5112
Fax: 877-352-6253
amb@kirbygsmith.com